## Pennsylvania Co., for Ins. on Lives, etc., Appellant, *v.* Lynch.

Argued April 20, 1932. Before FRAZER, C. J., SIMPSON, MAXEY, DREW and LINN, JJ.

*Earl G. Harrison,* with him *Lucien B. Carpenter, Francis H. Bohlen, Jr.,* and *Saul, Ewing, Remick & Saul,* for appellant.—The defendant's own testimony shows that she waived any right of action she might have had against the plaintiff for failure to sell the securities on October 18, 1929 : O'Neill v. Whigham, 87 Pa. 394; McManus v. Johann, 23 Pa. Dist. 322; Little v. Fearon & Co., 252 Pa. 430; Moerke v. Peterson Motors, Inc., 92 Pa. Superior Ct. 210.

In any event, the verdict of the jury determined all of the issues raised in the case, and was proper in form.

In cases where there is a set-off or counterclaim it is a well settled rule that the verdict need not name the amounts found due the plaintiff and defendant respectively, but only the difference: Morgan v. Hefler, 68 Maine 131.

*Adda Lutz Ferguson,* for appellee.—A general verdict for defendant without assessing damages, was fatally defective.

Defendant was entitled to a new trial because of the defective form of the verdict: Brown v. Trust Co., 174 Pa. 443.

OPINION BY MR. JUSTICE MAXEY, June 30, 1932:

The plaintiff sued the defendant upon five collateral notes, upon which there was due at the time suit was filed the sum of $22,466.38 with interest. After suit was brought, the collateral in the hands of the plaintiff was sold for $10,724.50 which with other credits reduced the principal amount of the debt to $10,918.23 as of November 28, 1930, the date of the sale. The defendant filed an affidavit of defense and counterclaim, in which she admitted the execution and delivery of the notes and the amounts due thereon, but averred that on October 18, 1929, she had been notified to furnish additional collateral, and being unable to do so, had ordered the plaintiff company to sell out her account. This she averred the plaintiff did not do, although it had agreed to. The defendant's counterclaim was for the difference between the market value of the securities on October 18, 1929, the date of the alleged order to sell out the account, and the amount of the loan.

Plaintiff filed a reply to the counterclaim denying that it had received any order to sell out the account, and denying that it ever agreed to sell out the collateral on October 18, 1929.

After trial the jury brought in a general verdict for the defendant. Plaintiff filed a motion for judgment n. o. v. Defendant also filed a motion for judgment n. o. v. and also filed a motion for a new trial and the court in banc dismissed the respective motions of plaintiff and defendant for judgments n. o. v., and granted defendant's motion for a new trial. Plaintiff appealed to this court from the order of the court below granting defendant's motion for a new trial.

In rendering a general verdict for the defendant, the jury made no disposition of defendant's counterclaim

against the plaintiff. The court below said in its opinion filed December 21, 1931: "This may have been due to the failure of the trial judge to charge more fully and explicitly on defendant's counterclaim. It is for this reason that we grant defendant's motion for a new trial, although we are strongly impressed with plaintiff's argument in support of its motion for judgment n. o. v." In the supplemental opinion filed a few days later the court said: "We wish to make entirely clear that the only reason a new trial was granted was the form of the verdict."

It is the contention of the appellee that a general verdict in her favor was insufficient because she had by the evidence established her right to money damages from the plaintiff.

It is true that in actions for debt or damages, if the jury finds in favor of the plaintiff, it must go further and find a specific sum for the plaintiff: Schmertz v. Shreeve et al., 62 Pa. 457, and Miller v. Hower, 2 Rawle 53. The two cases cited by appellant, where general verdicts were held to be sufficient, were not suits for damages for failure to sell stock as defendant's counterclaim against plaintiff is, but were suits for conversion. In Little v. William F. Fearon & Co., 252 Pa. 430, 97 A. 578, a stock broker was sued for conversion of securities. In Moerke v. Peterson Motors, Inc., 92 Pa. Superior Ct. 210, action was in trover for the conversion of an automobile.

A verdict for defendant in those cases where the latter has set up a counterclaim against the plaintiff means prima facie that defendant's counterclaim equally offsets plaintiff's claim. A counterclaim is "in effect a declaration by defendant against plaintiff in the nature of an independent action deferred until the defendant is brought into court": 23 Standard Enc. of Proc., page 582. "Where an established counterclaim is less than the plaintiff's demand, the plaintiff has judgment for the residue only, if it equals the plaintiff's claim, the judgment must be for the defendant, and in case it exceeds

what is claimed by the plaintiff, the defendant has judgment for the excess": 23 Standard Enc. of Proc., page 806; Seibert v. Dunn, 216 N Y. 237, 110 N. E. 447; Laska v. Harris, 215 N. Y. 554, 109 N. E. 599. In order to avoid any uncertainty, it is better practice to have the jury in its verdict declare that defendant's claim equally offsets plaintiff's claim, if it so finds, and then render a verdict for the defendant, and not merely return a general verdict for the defendant without a specific finding as to the balancing of the opposing claims. Several requests for jury instructions made by the defendant and affirmed by the court indicate that the defendant invited the general verdict she received. For example, the second request, which was affirmed by the court, reads as follows: "If you believe from the evidence that on October 18, 1929, plaintiff demanded additional collateral, and defendant refused to furnish the collateral and that plaintiff had collateral security which at current market prices would have produced a sum sufficient to pay plaintiff the amount of defendant's loan, and that plaintiff failed and neglected to sell the said securities and wipe out the indebtedness, then your verdict should be for defendant as to plaintiff's claim."

The fourth request, which was affirmed by the court, reads as follows: "If you believe that on October 18, 1929, when plaintiff demanded additional collateral and defendant refused to produce said collateral that the plaintiff by the exercise of reasonable diligence could have sold the collateral in its possession for a sum sufficient to wipe out defendant's indebtedness, then your verdict should be for the defendant."

The fifth request which was affirmed by the court reads as follows: "If you find that on October 18, 1929, the defendant authorized the plaintiff to sell her collateral in order to protect plaintiff's interests, then your verdict should be for the defendant."

The eighth request, which was affirmed by the court, was an instruction giving the jury the opportunity to find for the defendant in a specific amount, reads as

follows: "If you find that defendant instructed or authorized the plaintiff to sell out her account on October 18, 1929, and that the said sale would have produced a sum in excess of defendant's indebtedness to plaintiff, then the verdict should be for the defendant in the amount of said excess."

Evidently the court below had doubt as to the clarity and sufficiency of its instructions in respect to defendant's counterclaim. This is indicated by the quotation from the court's opinion of December 21, 1931. The court a few days later based its order granting a new trial on the form of the verdict. We think the form of the verdict could be upheld as technically correct and as indicating the jury's belief that the two opposing claims were so supported by evidence as to balance each other. Yet the general verdict without any specification as to what the jury actually found as to the balancing of the respective claims leaves open the question whether or not the jury gave due consideration to defendant's counterclaim, and also leaves one in some uncertainty as to whether or not the jury intended to award defendant nothing or to award her what she claimed. The trial judge apparently is in some doubt as to just what the jury's verdict meant, for, as appears from the excerpt quoted, he avows his "failure to charge more fully and explicitly on defendant's counterclaim."

We therefore believe that justice can best be subserved in this case by a new trial, as the court below ordered. This court will not reverse a lower court in ordering a new trial, except in clear cases of abuse of discretion. There is no such clear case of abuse of discretion in the record now before us. Since we affirm the judgment ordering a new trial, we will not review appellant's second assignment of error, which was based on the overruling of its motion in the court below for judgment non obstante veredicto. A new trial being ordered, the case is, of course, restored to the status it had before any trial took place and is fully open to be tried de novo.

The judgment is affirmed.